# IN THE COURT OF APPEALS OF IOWA

No. 14-1836
Filed June 24, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CLIFFORD LEE PUCKETT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, James C. Bauch (plea) and Joel A. Dalrymple (sentencing), Judges.


        Clifford Puckett appeals from his convictions and sentences for two counts of forgery and one count of second-degree theft. **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Joseph A. Fraioli, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Heather R. Quick, until withdrawal, and Kevin Cmelik, Assistant Attorneys General, Thomas J. Ferguson, County Attorney, and James J. Katcher, Assistant County Attorney, for appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DOYLE, J.**

Clifford Puckett challenges his convictions and sentences following his *Alford*[1] pleas to two counts of forgery and one count of second-degree theft. He claims his attorney was ineffective in failing to object or file a motion in arrest of judgment because the record failed to provide a factual basis to support his pleas. He also contends the district court abused its discretion in sentencing for failing to state a reason for imposing consecutive sentences. We affirm.

### I. *Background Facts and Proceedings.*

In 2013, law enforcement officials were contacted by a store owner seeking to press charges against Clifford Puckett and his then-girlfriend, now-wife, Brittany, for their failure to return or pay for a loaned Kirby vacuum cleaner. Both were subsequently charged by an amended trial information with second-degree theft, in violation of Iowa Code sections 714.1(1), and .2(2) (2013), as habitual offenders pursuant to section 902.8 (FECR190447).[2]

Additionally, in 2014, Clifford, Brittany, and another person that lived with the Pucketts were each charged by trial information, as later amended, with second-degree theft, in violation of the sections 714.1(1), .1(3), and .2(2), two counts of forgery, in violation of section 715A.2, and as habitual offenders pursuant to section 902.8 (FECR195345). According to the minutes of testimony in that case, a car dealership reported Brittany and the Pucketts' roommate had purchased a van with counterfeit money. Law enforcement officers went to the Pucketts' residence and saw the van parked in the driveway. The officers spoke

---

[1] An *Alford* plea allows a defendant to consent to the imposition of a sentence without expressly admitting guilt. *See North Carolina v. Alford*, 400 U.S. 25, 37 (1970).

[2] This charge and ultimate conviction are not challenged on appeal.

with Clifford, Brittany, and their roommate, and all three persons consented to a search of the residence. Officers found several fake bills inside Clifford's wallet. Several wadded-up fake bills were found in the roommate's room, along with a wallet containing her ID and several fake bills. Also found there was some wadded-up paper; one piece had the front of a $100 bill printed on it, and another piece had the back of a $100 bill printed on it. Additional fake bills were found in the room. A torn-up fake bill was found in the residence's kitchen, and "handfuls of clippings from printer paper with the edges of the fake bills still visible on them" were found in another garbage can in the residence. Another fake bill was found in the living room. A printer and paper were found in a spare bedroom. Additional printers were found in the Pucketts' bedroom. It was determined that all the serial numbers on the fake printed bills matched authentic U.S. currency found in Clifford's wallet.

Thereafter, Clifford entered into a plea agreement wherein he would enter *Alford* pleas to all four charges—two counts of second-degree theft (one in FECR190447, the other in FECR195345) and two counts of forgery (both in FECR195345)—in exchange for the State withdrawing the habitual-offender enhancement on each count. Additionally, the parties agreed Clifford would receive five-year sentences for all four counts, with the three counts in FECR195345 to run consecutively for a total fifteen-year sentence in that case. The parties further agreed they would argue before the sentencing court whether Clifford's fourth five-year sentence in FECR190447 would be run consecutively or concurrently with the fifteen-year sentence, thus entertaining the possibility of a total twenty-year sentence.

In his colloquy with the court concerning the plea agreements, Clifford agreed that his "chances at trial might be somewhat limited and there [was] a high likelihood that [he] could be convicted of these charges." Clifford also agreed the court could rely upon the minutes of testimony in each case as forming the factual bases of his pleas. The court then accepted Clifford's *Alford* pleas, finding factual bases existed in the record based upon the minutes of testimony, which "more than substantially corroborate[d] or substantiate[d] the charges" against Clifford. The court further determined Clifford's pleas were entered knowingly, intelligently, and voluntarily. Sentencing was set for a later date.

At the subsequent sentencing hearing, the State and Clifford presented arguments concerning whether Clifford's conviction in FECR190447 should run consecutively or concurrently with his fifteen-year sentence in FECR195345, as well as whether Clifford should be sentenced to prison-time or be placed on probation. The court sentenced Clifford to a term of imprisonment not to exceed five years on each count (two counts of forgery and one count theft of the van), with the terms in FECR195345 to run concurrently and to run consecutively to the five-year term in FECR190447 (theft of vacuum cleaner), for a total term of imprisonment not to exceed ten years. The court explained:

> I find that your prior criminal history is atrocious to say the least. There's been—you're not an old individual by any means, and in the recent past you have been afforded a variety of services throughout your stints with the criminal justice system going as far back as your juvenile history and being to the State Training School.
>      You then punched your ticket as a felon in the adult court twice. You've been in the facility. You've had that opportunity blown. You've had probation to the extent that you're on street

probation and blew it. You had facility and you blew it. You've been to prison, you've been out on parole, and you blew that as well. You've . . . basically violated all opportunities through supervision.

Albeit since June of this year you were on probation, I cannot imagine, certainly not questioning the sentencing court there, but you were given probation. That's certainly their prerogative and their discretion. I'm just simply not willing to do that at this time given your history, given the lack of success you've had thus far.

The court further explained to Clifford it deviated from the plea agreement

because, first and foremost, I don't mean to trivialize what you did, but in the grand scheme of things a vacuum cleaner, albeit a very expensive vacuum cleaner, and the amount of money that we're talking about that was being manufactured, and the theft of the vehicle used, . . . I do find that that find that that is somewhat mitigating from the nature of the plea agreement that the parties had reached as far as the terms between fifteen and twenty.

However, on the other side of that particular coin, the court does consider your prior criminal history and the number of felonies that you have, your lack of success while on supervision, the fact that you have another case as an adult, albeit you're on probation, but nonetheless, that is a conviction for the court to consider as a basis for the entry of this particular sentence. I have also considered your age and the sentencing goals and objectives of this court.

The court noted it had "considered the factors set out in Iowa Code section 907.5," and it found the sentence it imposed "to be appropriate."

Clifford now appeals.

*II. Discussion.*

On appeal, Clifford asserts his attorney rendered ineffective assistance of counsel by failing to object or file a motion in arrest of judgment because the record failed to provide a factual basis to support his pleas. He also contends the sentencing court abused its discretion because it failed to state a reason for imposing consecutive sentences. We address his arguments in turn.

### A. *Factual Basis for Plea.*

Clifford did not file a motion in arrest of judgment, which is ordinarily required to challenge the validity of a guilty plea.  *See* Iowa Rs. Crim. P. 2.8(2)(d), .24(3)(a); *State v. Finney*, 834 N.W.2d 46, 49 (Iowa 2013).  However, an exception to our normal rules of error preservation exists "when a defendant alleges trial counsel was ineffective for permitting him to plead guilty to a charge for which there is no factual basis and for failing to thereafter file a motion in arrest of judgment."  *Finney*, 834 N.W.2d at 49.  Consequently, because Clifford raises his claim as one of ineffective assistance, we may consider his claim on direct appeal if "the record is sufficient to permit a ruling."  *See id.*  We find the record here is sufficient for resolution on direct appeal, and our review is de novo.  *See id.*

In order to prove trial counsel was ineffective, Clifford must establish his counsel breached an essential duty and prejudice resulted therefrom.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Rhoades v. State*, 848 N.W.2d 22, 28 (Iowa 2014).  "If trial counsel permits a defendant to plead guilty and waives the defendant's right to file a motion in arrest of judgment when there is no factual basis to support the defendant's . . . plea, trial counsel breaches an essential duty," and the law is well-settled that prejudice is presumed under these circumstances.  *Rhoades*, 848 N.W.2d at 29.  "[W]hether there is a factual basis in the record to support the charge to which the defendant seeks to plead guilty is an objective inquiry that has nothing to do with the state of mind of the accused, but everything to do with the state of the record evidence."  *Finney*, 834 N.W.2d at 55.  Generally, a factual basis may be gleaned from "(1) the prosecutor's

statements, (2) the defendant's statements, (3) the minutes of testimony, and (4) the presentence report, if available at the time of the plea." *Rhoades*, 848 N.W.2d at 29. The record need only demonstrate the facts to support the offense's elements; "the totality of evidence necessary to support a guilty conviction" is not required. *Id.* Stated another way, it is not required that "the district court have before it evidence that the crime was committed beyond a reasonable doubt, but only that there be a factual basis to support the charge." *Finney*, 834 N.W.2d at 62. Insofar as intent "is seldom capable of direct proof," a court may "infer intent from the normal consequences of one's actions." *State v. Evans*, 671 N.W .2d 720, 725 (Iowa 2003).

### 1. Forgery.

Iowa Code section 715A.2(1) provides:

> 1. A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person does any of the following:
> a. Alters a writing of another without the other's permission.
> b. Makes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize that act, or so that it purports to have been executed at a time or place or in a numbered sequence other than was in fact the case, or so that it purports to be a copy of an original when no such original existed.
> . . . .
> d. Possesses a writing which the person knows to be forged in a manner specified in paragraph "a" or "b."

Here, fake currency was found in Clifford's wallet, its serial numbers matching the authentic currency also found in his wallet. The paper from which the fake bills were clipped was found in the residence's kitchen. Fake bills were found throughout the Puckett residence—all having serial numbers that matched

the authentic currency found in Clifford's wallet. Printers were found in Clifford's bedroom and in a spare bedroom. Clifford's wife and their roommate used fake currency with the same serial numbers to purchase a van, which Clifford's wife and their roommate returned to their residence. Clifford's knowledge that he possessed forged currency can be inferred from all of these circumstances. Though not necessarily evidence to overcome the reasonable doubt standard, the minutes of testimony clearly provide sufficient evidence from which a factfinder could infer that Clifford knew he possessed forged currency, supporting the factual bases for his forgery pleas. Consequently, Clifford has not proven his trial counsel failed to perform an essential duty. *See State v. Carroll*, 767 N.W.2d 638, 645 (Iowa 2009) ("[C]ounsel has no duty to pursue a meritless issue."). Thus, Clifford's trial attorney did not breach an essential duty, and we need not address the prejudice element of ineffective assistance. *See Everett v. State*, 789 N.W.2d 151, 159 (Iowa 2010). We affirm on this issue.

### 2. *Second-Degree Theft.*

For the same reasons, we find the minutes of testimony provide the factual basis for Clifford's second-degree theft conviction concerning the van's theft. Under Iowa Code section 714.1:

> A person commits theft when the person does any of the following:
> 1. Takes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof.
> . . . .
> 3. Obtains the labor or services of another, or a transfer of possession, control, or ownership of the property of another, or the beneficial use of property of another, by deception.

To support a conviction under an aiding-and-abetting theory,

> [t]he record must contain substantial evidence to show that the accused assented to or lent countenance and approval to the criminal act either by active participation in it or in some manner encouraging it prior to or at the time of its commission. Although the accused's mere presence is not enough, the requisite participation can be inferred "from circumstantial evidence including presence, companionship or conduct before and after the offense is committed."

*State v. Miles*, 346 N.W.2d 517, 520 (Iowa 1984) (citation omitted); *see also State v. Tangie*, 616 N.W.2d 564, 574 (Iowa 2000). And when, as here, specific intent is an element of the crime charged, a defendant may be guilty under a theory of aiding and abetting if he participates with either the requisite intent, or with knowledge the principal possesses the required intent. *Tangie*, 616 N.W.2d at 574.

Under the facts presented in the minutes of testimony, fake currency was found in Clifford's wallet with serial numbers matching the real currency in his wallet. Fake bills with those serial numbers were used by Clifford's wife and their roommate to purchase the van, which they brought back to their residence thereafter. Fake bills were found throughout the Puckett residence—all having serial numbers that matched the authentic currency found in Clifford's wallet. Printers were found in Clifford's bedroom and in a spare bedroom. Paper clippings left over from the production of the fake currency were found in the residence's kitchen. Clifford and the van were present at the residence when the officials spoke with the parties about the theft. Clifford's knowledge and participation in the theft can be inferred from all of these circumstances. We find the minutes of testimony provide at least minimally sufficient evidence from which a factfinder could conclude from all of the evidence that Clifford aided and

abetted the theft. Consequently, Clifford has not proven his trial counsel failed to perform an essential duty, and we need not address the second prong of ineffective assistance. *See Everett*, 789 N.W.2d at 159; *Carroll*, 767 N.W.2d at 645. We therefore affirm on this issue.

### B. Sentencing.

The court sentenced Clifford to a term of imprisonment not to exceed five years on each of the forgery and van theft counts, to run concurrently with one another, and that they would run consecutively to the five-year term imposed for the vacuum cleaner theft count, for a total term of imprisonment not to exceed ten years. Clifford contends the sentencing court abused its discretion in failing to articulate specific reasons for imposing consecutive sentences. We review sentencing decisions for abuse of discretion, which will only be found if the court acted "on grounds clearly untenable or to an extent clearly unreasonable." *State v. Hopkins*, 860 N.W.2d 550, 553 (Iowa 2015) (internal quotation marks and citations omitted). "We give sentencing decisions by a trial court a strong presumption in their favor." *Id.*

"If a person is sentenced for two or more separate offenses, the sentencing judge may order the second or further sentence to begin at the expiration of the first or succeeding sentence." Iowa Code § 901.8. A sentencing court must state, on the record, its reason for selecting a particular sentence. *State v. Barnes*, 791 N.W.2d 817, 827 (Iowa 2010) (citing Iowa R. Crim. P. 2.23(3)(d)). The court must also provide reasons for imposing consecutive sentences. *Id.* "A statement may be sufficient, even if terse and succinct, so long as the brevity of the court's statement does not prevent review

of the exercise of the trial court's sentencing discretion." *State v. Hennings*, 791 N.W.2d 828, 838 (Iowa 2010). We may look to the court's overall sentencing rationale to glean the reasoning for imposing consecutive sentences. *See id.* ("[I]t is apparent to us that the district court ordered the defendant to serve his sentences consecutively as part of an overall sentencing plan.").

Here, the district court explicitly stated on the record why it ran Clifford's two five-year sentences consecutively. It reviewed Clifford's past criminal history and the chances he had been given. The court found Clifford "blew" the opportunities he had been given. The court was not willing to give Clifford another chance. Moreover, the court explained it was not only sentencing Clifford to less time recommended by the State, it sentenced him to less time than the amount of time he agreed to serve in his plea agreement. The court gave a thorough explanation of all the factors it considered in making its decision, and its reasoning is apparent from the overall sentencing rationale. Accordingly, we find the sentencing court did not abuse its discretion in running Clifford's two five-year sentences consecutively, and we affirm on this issue.

### IV. Conclusion.

For the foregoing reasons, we affirm Clifford's convictions and sentences for two counts of forgery and one count of second-degree theft.

**AFFIRMED.**